# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELE BAKER,<br><br>　　　　　　　　Plaintiff,<br>vs.<br>ROMAN CATHOLIC ARCHDIOCESE OF SAN DIEGO; ROMAN CATHOLIC ARCHDIOCESE OF SAN DIEGO dba CATHEDRAL CATHOLIC HIGH SCHOOL; CATHEDRAL CATHOLIC HIGH SCHOOL,<br><br>　　　　　　　　Defendants. | CASE NO. 14cv0800 JM(JMA)<br><br>ORDER GRANTING MOTION TO DISMISS; GRANTING LEAVE TO AMEND |

Defendant The Roman Catholic Bishop of San Diego ("RCBSD"), erroneously sued as Roman Catholic Archdiocese of San Diego, Roman Catholic Archdiocese of San Diego dba Cathedral Catholic High School and Cathedral Catholic High School, moves to dismiss all claims alleged in Plaintiff Michele Baker's disability, retaliation, and declaratory relief First Amended Complaint ("FAC").  Plaintiff opposes the motion.  Pursuant to Local Rule 7.1(d)(1), the court finds the matters presented appropriate for decision without oral argument.  For the reasons set forth below, the court grants the motion to dismiss the complaint and grants Plaintiff 21 days leave to amend from the date of entry of this order.

## BACKGROUND

On April 4, 2014, RCBSD removed this action from the Superior Court for the

State of California, County of San Diego, based upon federal question jurisdiction under 28 U.S.C. §§1331, 1441, and 1446. The FAC alleges three claims for relief: (1) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12112 et seq.; (2) retaliation and wrongful termination in violation of California public policy; and (3) declaratory and injunctive relief. (Ct. Dkt. 13). All of Plaintiff's claims arise from the following generally described conduct.

Plaintiff, a 67-year-old teacher, was employed by RCBSD for over 13 years at the Cathedral Catholic High School ("CCHS"). (FAC ¶9). On August 23, 2012, Plaintiff "sustained and/or aggravated and/or developed perceived and/or physical disability(s) including, but not limited to, concussions, vision problems, including symptoms of dizziness, instability, loss of balance, and double vision and migraine headaches." (FAC ¶12). The alleged disability limited Plaintiff's "major life activities, including working, amongst others." (FAC ¶13). After sustaining the condition, Plaintiff requested, and received, a one-week leave of absence under the California Family Rights Act ("CFRA"). (FAC ¶17). At RCBSD's request, Plaintiff filed a workers compensation claim. After this incident, RCBSD allegedly began "harassing, discriminating against and retaliating Plaintiff in terms and conditions of her employment." (FAC ¶14).

In January 2013, RCBSD conducted a performance review of Plaintiff, the first review since 2009. In February 2013, the Principal at CCHS, Michael Deely, "informed Plaintiff that various categories of work performance and work behavior were 'areas for growth' and that her contract was not being renewed." (FAC ¶21). On August 8, 2013, Plaintiff alleges that she was "wrongfully terminated for the stated reason that Plaintiff had performance problems." (FAC ¶22).

From August 23, 2012 and continuing through August 8, 2013, Plaintiff alleges that she was "discriminated, harassed, and retaliated against [] on the basis of Plaintiff's perceived and/or physical disability(s), by the following continuous actions, and conduct;"

    a.    Failing to determine the extent of Plaintiff's disability and to accommodate it;

    b.    Failing to inform Plaintiff of other "job opportunities within the company;"

    c.    Failing move Plaintiff into other employment openings;

    d.    Failing to engage in the interactive process to accommodate Plaintiff's disability;

    e.    "Harassing, discriminating against and retaliating against Plaintiff based on Plaintiff's perceived and/or physical disability(s);"

    f.    "Harassing, discriminating against and retaliating against Plaintiff based on taking and/or requesting and/or being entitled to CFRA/FMLA and/or other medical and/or negotiated leave in order to recuperate and heal;:

    g.    "Harassing, discriminating against and retaliating against Plaintiff based on age, over forty, as herein alleged;"

    h.    Failure to renew the employment contract;

    i.    Retaliating against Plaintiff in failing to renew the employment contract for no stated reason and/or the pretext that Plaintiff had performance problems;

    j.    Failure to give Plaintiff written confirmation in the change in her employment status as required by Unemployment Insurance Code §1089;

    k.    Replacing Plaintiff with a younger and non-disabled individual; and

    l.    Failing to rehire or re-employ Plaintiff.

(FAC ¶26).

The Second Cause of Action alleges that Plaintiff was retaliated against and terminated in violation of public policy and "discriminated, harassed, and retaliated against [] on the basis of Plaintiff's perceived and/or physical disability(s). (FAC ¶44). The FAC then repeats the same alleged course of conduct identified in the previous paragraph.

On August 8, 2014, this court granted RCBSD's motion to dismiss the FEHA claims with prejudice and granted the motion to dismiss the ADA and retaliation claims without prejudice and with leave to amend. Plaintiff amended her complaint and Defendant renews its motion to dismiss.

# DISCUSSION

**Legal Standards**

Federal Rule of Civil Procedure 12(b)(6) dismissal is proper only in "extraordinary" cases. United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981). Courts should grant 12(b)(6) relief only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). Courts should dismiss a complaint for failure to state a claim when the factual allegations are insufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp v. Twombly, 550 U.S. 544, 555 (2007) (the complaint's allegations must "plausibly suggest[]" that the pleader is entitled to relief); Ashcroft v. Iqbal, 556 U.S. 662 (2009) (under Rule 8(a), well-pleaded facts must do more than permit the court to infer the mere possibility of misconduct). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The defect must appear on the face of the complaint itself. Thus, courts may not consider extraneous material in testing its legal adequacy. Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th Cir. 1991). The courts may, however, consider material properly submitted as part of the complaint. Hal Roach Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

Finally, courts must construe the complaint in the light most favorable to the plaintiff. Concha v. London, 62 F.3d 1493, 1500 (9th Cir. 1995), cert. dismissed, 116 S. Ct. 1710 (1996). Accordingly, courts must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. Holden v. Hagopian, 978 F.2d 1115, 1118 (9th Cir. 1992). However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion. In Re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).

**The ADA Claim** (Claim 2)

The elements of a disability discrimination claim under the ADA are (1) the claimant has a disability (as defined in 42 U.S.C. §12102(2)), (2) the claimant is qualified to perform the essential function of the job, (3) the claimant has suffered adverse employment action because of the disability. <u>Hutton v. Elf Atochem North America, Inc.</u>, 273 F.3d 884, 895 (9th Cir. 2001).

The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities of [the] individual [who claims the disability]," or "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). "Major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). The Ninth Circuit in <u>Weaving v. City of Hillsboro</u>, 763 F.3d 1106 (9th Cir. 2014), recently articulated that the term "disability" is to be construed broadly to accomplish the purposes of the ADA.

> A 2008 amendment to the ADA provides, "The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A). "The term 'substantially limits' shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008." <u>Id.</u> § 12102(4)(B). Those findings and purposes specifically express Congress's view that prior Supreme Court and lower court cases, as well as Equal Employment Opportunity Commission ("EEOC") regulations, had given "substantially limits" an unduly narrow construction. ADA Amendments Act of 2008, § 2(a)(4)-(8), Pub.L. No. 110–325, 122 Stat. 3553, 3553. "An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability." 42 U.S.C. § 12102(4)(C). According to post 2008 regulations promulgated by the EEOC,
>
> An impairment is a disability ... if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting.

> 29 C.F.R. § 1630.2(j)(1)(ii). Determining whether an impairment is substantially limiting "requires an individualized assessment." Id. § 1630.2(j)(1)(iv).

Id. at 1112

Here, Plaintiff alleges that she suffered, from August 2012 to the present time, from a disability consisting of a concussion and vision problems, including dizziness, instability, loss of balance, and double vision. (FAC ¶11-13, 15). The disabilities affected major life activities including working, walking and seeing. (FAC ¶15). Plaintiff further alleges that she was "regarded as having" a disability in violation of 42 U.S.C. § 12102(1). Plaintiff notified Principal Deely of her double vision, dizziness, and migraines. As such, Plaintiff concludes that she was "regarded" as a disabled person. Id.

Although a very close call, the court concludes that the FAC's allegations fail to raise more than a mere possibility of misconduct. The FAC alleges that Plaintiff fell in August 2012, requested and received one week of medical leave, and worked continuously for almost one year without taking additional time off because of her alleged disabilities. This allegation undermines Plaintiff's allegation that her "disabilities" affected her ability to work. The fact that the FAC borrows from 42 U.S.C. §12102(a)(2)(A) (defining "major life activities" to include working and "caring for oneself . . . seeing, hearing, eating, sleeping, walking, . . .") to allege that major life activities such as working, walking, and seeing were impacted by her disability, fail to state a claim. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. Iqbal, 556 U.S. at 578. The FAC alleges that Plaintiff successfully performed her work-related duties for almost one year without the need for any medical leave or accommodation. (FAC ¶25, Plaintiff "could perform the essential duties of Plaintiff's job with or without an accommodation").

With respect to Plaintiff's claim that she was regarded as disabled, she alleges adverse employment actions consisting of "hostility towards Plaintiff taking time off

1  for medical appointments (FAC ¶19a), unfairly scrutinizing her work performance
2  (FAC ¶19b), excessively critiquing Plaintiff's work behavior (FAC ¶19c), and
3  suddenly required 'annual review and evaluations' from Plaintiff which was a marked
4  departure from Defendant's past conduct." (Oppo. at p.8:1-5). The generic use of the
5  terms like "hostility, unfairly scrutinizing, and excessively critiquing," without more,
6  fail to sufficiently inform Defendant of the nature of the wrongful conduct such that it
7  may productively pursue discovery and respond to the FAC.[1]

8       In sum, the court concludes that the FAC fails to adequately allege that Plaintiff
9  is disabled for purposes of the ADA. Consequently, Plaintiff fails to state a claim for
10 either ADA discrimination, retaliation, or wrongful termination and the court dismisses
11 all claims. The court also grants Plaintiff 21 days' leave to amend from the date of
12 entry of this order to file a Second Amended Complaint ("SAC"). Plaintiff is also
13 advised that the failure to state a claim in the SAC may result in the dismissal of the
14 SAC with prejudice.

15     **IT IS SO ORDERED.**

16 DATED: December 17, 2014

17                                           Hon. Jeffrey T. Miller
18    cc:         All parties              United States District Judge

---

[1] With respect to Plaintiff's failure to accommodate allegations, the court notes that Plaintiff fails to allege that she ever requested accommodation of her disability.