1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **SOUTHERN DISTRICT OF CALIFORNIA**

10 | MICHELE BAKER, | CASE NO. 14cv0800 JM(JMA)

11 | Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING MOTION TO STRIKE; DENYING LEAVE TO AMEND

12 | vs.

13 | ROMAN CATHOLIC ARCHDIOCESE OF SAN DIEGO;

14 | ROMAN CATHOLIC ARCHDIOCESE OF SAN DIEGO

15 | dba CATHEDRAL CATHOLIC HIGH SCHOOL; CATHEDRAL

16 | CATHOLIC HIGH SCHOOL,

17 | Defendants.

18      Defendant The Roman Catholic Bishop of San Diego ("RCBSD"), erroneously

19 sued as Roman Catholic Archdiocese of San Diego, Roman Catholic Archdiocese of

20 San Diego dba Cathedral Catholic High School and Cathedral Catholic High School,

21 moves to dismiss all claims alleged in Plaintiff Michele Baker's disability

22 discrimination Second Amended Complaint ("SAC").  Plaintiff opposes the motion.

23 Pursuant to Local Rule 7.1(d)(1), the court finds the matters presented appropriate for

24 decision without oral argument.  For the reasons set forth below, the court denies the

25 motion to dismiss the disability discrimination claim, grants the motion to dismiss the

26 wrongful termination claim, grants the motion to dismiss the declaratory relief claim,

27 denies the motion to strike, and denies Plaintiff leave to amend.

28

**BACKGROUND**

On April 4, 2014, RCBSD removed this action from the Superior Court for the State of California, County of San Diego, based upon federal question jurisdiction under 28 U.S.C. §§1331, 1441, and 1446. The SAC alleges three claims for relief: (1) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12112 et seq.; (2) retaliation and wrongful termination in violation of California public policy; and (3) declaratory and injunctive relief. (Ct. Dkt. 22). All of Plaintiff's claims arise from the following generally described conduct.

Plaintiff, a 67 year old teacher, was employed by RCBSD for over 13 years at the Cathedral Catholic High School ("CCHS"). (FAC ¶9). On August 23, 2012, Plaintiff "sustained and/or aggravated and/or developed perceived and/or physical disability(s) as a result of a fall in a stairwell at Defendants' school causing Plaintiff to strike her head." (SAC ¶13). As a result of the fall, Plaintiff suffered, and continues to suffer, from "vision problems, including symptoms of dizziness, instability, loss of balance, and double vision and migraine headaches." Id. Plaintiff has fallen on several occasions and is no longer able to drive at night. As a consequence of her injuries, Plaintiff alleges that Defendant perceived or regarded her as a disabled person having an impairment preventing her from engaging in major life activities. (SAC ¶16).

After the fall, Plaintiff requested, and received, a one week leave of absence under the California Family Rights Act ("CFRA"). (SAC ¶17). At RCBSD's request, Plaintiff filed a workers compensation claim. While on leave or on negotiated leave, Plaintiff received electronic communications from the principal of CCHS, Michael Deely, "pressuring her to return to work." (SAC ¶18). Between September and December 2012, Principal Deely inquired about Plaintiff's health and was told by Plaintiff that she continued to suffer from double-vision, dizziness, and migraines. (SAC ¶20).

In January 2013, RCBSD conducted a performance review of Plaintiff, the first review since 2009. Plaintiff alleges that the true reason for the performance review

was to falsely accuse Plaintiff of incompetence and to facilitate pretextual reasons for the wrongful termination. (SAC ¶23). In February 2013, Principal Deely, "informed Plaintiff that various categories of work performance and work behavior were 'areas for growth' and that her contract was not being renewed." (SAC ¶25). On August 8, 2013, Plaintiff alleges that she was "wrongfully terminated for the stated reason that Plaintiff had performance problems." (SAC ¶27).

Between August 2012 and August 2013, Plaintiff's disabilities and conditions continued. After her injury, Defendants allegedly began harassing, discriminating against, and retaliating against Plaintiff in the following alleged terms and conditions of employment:

"a. Failing to determine the extent of Plaintiff's disability(s) and how they could be accommodated;

b. Failing to take any affirmative steps to inform Plaintiff of any job opportunities within the company;

c. Failing to consider Plaintiff for and move Plaintiff into openings for which Plaintiff was qualified and could handle subject to Plaintiff's disability(s);

d. Failing to engage in a timely, good faith, interactive process with Plaintiff to determine effective reasonable accommodations ;

e. Harassing, discriminating against and retaliating against Plaintiff based on Plaintiff's perceived and/or physical disability(s), as herein alleged;

f. Harassing, discriminating against and retaliating against Plaintiff based on taking and/or requesting and/or being entitled to CFRA/FMLA and/or other medical and/or negotiated leave in order to recuperate and heal, as herein alleged;

g. Harassing, discriminating against and retaliating against Plaintiff based on age, over forty, as herein alleged;

h. Failing to renew Plaintiff's contract, as herein alleged;

i. On or about August 8,2013, retaliating against and wrongfully terminating Plaintiff for no stated reason and/or the false and/or exaggerated and/or pretextual reason(s) that Plaintiff had performance problems;

j. Violating California Unemployment Insurance Code § 1089 et seq., by failing to give Plaintiff written confirmation of the change in Plaintiff's employment status, in preparation and/or anticipation of arguing false and/or shifting termination reasons, which is further evidence of Defendants' pretext and pretextual reasons and/or motives for Plaintiff's termination;

k. Keeping and/or replacing Plaintiff with, and/or treating more favorably, a less experienced, less senior, younger and/or non-disabled individual;

1        1. Failing to rehire and/or re-employ Plaintiff."

2    (SAC ¶33).

3          On August 8, 2014, this court granted RCBSD's motion to dismiss the original

4    complaint alleging FEHA claims with prejudice and granted the motion to dismiss the

5    ADA and retaliation claims without prejudice and with leave to amend.  Plaintiff

6    amended her complaint and, on December 17, 2014, the court granted Defendant's

7    motion to dismiss the First Amended Complaint.  Defendant now renews its motion to

8    dismiss the SAC and to strike one of the complaint's allegations as redundant and

9    immaterial.  Plaintiff opposes the motion and, in the event the motion to dismiss is

10   granted, Plaintiff seeks leave to amend.

11   **DISCUSSION**

12   THE MOTION TO DISMISS

13   **Legal Standards**

14        Federal Rule of Civil Procedure 12(b)(6) dismissal is proper only in

15   "extraordinary" cases. United States v. Redwood City, 640 F.2d 963, 966 (9th Cir.

16   1981).  Courts should grant 12(b)(6) relief only where a plaintiff's complaint lacks a

17   "cognizable legal theory" or sufficient facts to support a cognizable legal theory.

18   Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).  Courts should

19   dismiss a complaint for failure to state a claim when the factual allegations are

20   insufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp

21   v. Twombly, 550 U.S. 544, 555 (2007) (the complaint's allegations must "plausibly

22   suggest[]" that the pleader is entitled to relief); Ashcroft v. Iqbal, 556 U.S. 662 (2009)

23   (under Rule 8(a), well-pleaded facts must do more than permit the court to infer the

24   mere possibility of misconduct).  "The plausibility standard is not akin to a 'probability

25   requirement,' but it asks for more than a sheer possibility that a defendant has acted

26   unlawfully." Id. at 678.  Thus, "threadbare recitals of the elements of a cause of action,

27   supported by mere conclusory statements, do not suffice." Id.  The defect must appear

28   on the face of the complaint itself.  Thus, courts may not consider extraneous material

in testing its legal adequacy.  Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th Cir. 1991).  The courts may, however, consider material properly submitted as part of the complaint.  Hal Roach Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

Finally, courts must construe the complaint in the light most favorable to the plaintiff.  Concha v. London, 62 F.3d 1493, 1500 (9th Cir. 1995), cert. dismissed, 116 S. Ct. 1710 (1996).  Accordingly, courts must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them.  Holden v. Hagopian, 978 F.2d 1115, 1118 (9th Cir. 1992).  However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion.  In Re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).

**The ADA Claim**

The elements of a disability discrimination claim under the ADA are (1) the claimant has a disability (as defined in 42 U.S.C. §12102(2)), (2) the claimant is qualified to perform the essential function of the job, (3) the claimant has suffered adverse employment action because of the disability.  Hutton v. Elf Atochem North America, Inc., 223 F.3d 884, 895 (9th Cir. 2001).

The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities of [the] individual [who claims the disability]," or "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). "Major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).  The Ninth Circuit in Weaving v. City of Hillsboro, 763 F.3d 1106 (9th Cir. 2014), recently articulated that the term "disability" is to be construed broadly to accomplish the purposes of the ADA. A 2008 amendment to the ADA provides, "The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A). "The term 'substantially limits' shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008." Id. § 12102(4)(B). Those findings and purposes specifically express Congress's view that prior Supreme Court and lower court cases, as well as Equal Employment Opportunity Commission ("EEOC") regulations, had given "substantially limits" an unduly narrow construction. ADA Amendments Act of 2008, §2(a)(4)-(8), Pub.L. No. 110–325, 122 Stat. 3553, 3553. "An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability." 42 U.S.C. §12102(4)(C).

1    According to post 2008 regulations promulgated by the EEOC,

2
3       An impairment is a disability ... if it substantially limits the
        ability of an individual to perform a major life activity as
        compared to most people in the general population. An
4       impairment need not prevent, or significantly or severely
        restrict, the individual from performing a major life activity
5       in order to be considered substantially limiting.

6
        29 C.F.R. § 1630.2(j)(1)(ii). Determining whether an impairment is
7       substantially limiting "requires an individualized assessment."   Id.
        §1630.2(j)(1)(iv).
8
    Id. at 1112.
9

10       Here, the SAC provides Defendant with additional allegations to satisfy all

11   elements of an ADA claim.  Plaintiff alleges that her disability resulted from a fall and

12   injury to her head that led to on-going concussions, vision problems, dizziness,

13   instability, and the loss of balance.  These conditions allegedly and substantially

14   limited Plaintiff's ability to work, walk, and see. (SAC ¶¶11, 13, 15).  Further, Plaintiff

15   alleges that she was regarded as being disabled because of her medical and physical

16   conditions.  (SAC ¶¶13, 16, 19, 22, 23).

17       Plaintiff also adequately alleges that she was qualified to perform her job and

18   that she suffered an adverse employment decision because of her disability.  Plaintiff

19   alleges that Defendant was openly hostile to Plaintiff, subjecting her to unfair and

20   excessive monitoring of her teaching performance.  Further, Plaintiff alleges that she

21   suffered disability harassment because, in part, she was subjected to an "annual"

22   performance review that had not been conducted for several years. (SAC¶¶16-20, 23,

23   24, 26).  Such allegations, Plaintiff argues, establishes that Plaintiff was disabled or

24   "regarded" as disabled.  Construing the SAC in the best light to Plaintiff, see Concha,

25   62 F.3d at 1500, the SAC's allegations give rise to a disability discrimination cause of

26   action.

27       In sum, the court denies the motion to dismiss the ADA claim.

28   **The Wrongful Termination Claim**

1    Defendant contends that the state law cause of action for wrongful termination
2    fails, as a matter of law, because in <u>Daly v. Exxon Corp.</u>, 55 Cal.App.4th 39, 45-46
3    (1997), the court held that a claim for wrongful termination in violation of public
4    policy cannot be based upon the non-renewal of an employment contract.  In <u>Daly</u>, the
5    parties entered into an employment contract for a period of one year.  The contract was
6    renewed for two additional one–year extensions.  During the third year, the employee
7    complained to Exxon about unsafe working conditions.  Several months later the
8    employer provided Plaintiff with written notice that his contract would not be renewed
9    and did not renew the contract.  Plaintiff then commenced a wrongful termination
10   action and the trial court sustained a demurrer with prejudice.  The Court of Appeal
11   reversed the trial court's dismissal in part, concluding that the plaintiff could state a
12   statutory claim under Labor Code §6310(b) (providing statutory remedy where an
13   employer unlawfully discriminates against an employee by not renewing an
14   employment contract because the employee made a bona fide complaint about unsafe
15   work-place conditions), but sustained the dismissal of the wrongful termination claim.
16   The Court of Appeal concluded that, in context of employment agreements, the
17   "employment is terminated by . . . expiration of its appointed term."  <u>Id.</u> (citing Labor
18   Code §2920(a)); <u>Touchstone Television Prods. v. Superior Court</u>, 208 Cal.App.4th 678,
19   682 (2012) ("a decision not to renew a contract set to expire is not actionable in tort");
20   <u>Motevalli v. Los Angeles Unified School Dist.</u>, 122 Cal.App.4th 97, 102 (2004) ("no
21   cause of action exists for tortious nonrenewal of an employment contract in violation
22   of public policy").

23   Here, California law does not permit Plaintiff to state a claim for tortious
24   nonrenewal of an employment contract.  Plaintiff contends that the court should not
25   apply <u>Daly</u> because an employer could discriminate on the basis of a prohibited reason
26   (i.e. race, religion, disability, etc.) and "there would be no basis for a wrongful
27   termination cause of action."  (Oppo. at p.16:2-3).  This argument is not persuasive.
28   While a common law tort for wrongful non-renewal of an employment contract does

14cv0800

1  not exist, the injured hypothetical party has viable statutory remedies (i.e. the ADA,
2  Title VII, or various other state or federal statutory schemes). Consequently, Plaintiff
3  cannot state a claim for tortious nonrenewal of the employment contract.

4      In sum, the court dismisses with prejudice the wrongful termination claim based
5  upon the nonrenewal of the contract.

6  **The Declaratory Relief Claim**

7      Defendant moves to dismiss the declaratory relief cause of action because a
8  separate stand-alone claim for declaratory relief does not exist in the absence of a
9  FEHA claim.  See  Harris v. Santa Monica, 56 Cal.4th 203, 211 (2013).  Plaintiff
10 argues that injunctive relief may be appropriate to ensure that Defendant does not
11 engage in any future acts of harassment or retaliation.  This argument is insufficient to
12 establish a separate claim for declaratory relief.  Declaratory relief is not a separate
13 claim, but a measure of relief.  See Stocke W., Inc. v. Confederated Tribes of the
14 Colville Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989); Lane v. Vitek Real Estate
15 Indus. Grp., 713 F.Supp.2d 1092, 1104 (E.D.Cal.2010) ("Declaratory and injunctive
16 relief are not independent claims, rather they are forms of relief.").

17     In sum, the court grants the motion to dismiss the separate declaratory relief
18 claim.

19 **The Motion to Strike**

20     Pursuant to Federal Rule of Civil Procedure 12(f), Defendant moves to strike one
21 allegation concerning a former employee.  The challenged allegation states:

22     29.   Defendants, and each of the, (sic) conduct is consistent with prior
              acts of discrimination and harassment and retaliation against
23            injured employees, including but not limited to, Defendants' ex-
              physics and biology instructor Radostina Zlatonanov, who suffered
24            a fall and/or disability in 2010 and was subsequently mistreated by
              Defendants resulting in her wrongfully (sic) termination before the
25            end of the 2010-2011 school year.

26 Defendant argues that this allegation is redundant, irrelevant, immaterial, improper and
27 scandalous within the meaning of Rule 12(f).  Moreover, Defendant asserts that this
28 allegation will confuse the issues and cause unnecessary delays.

1    Even though this allegation is remote in time, involves a discharged employee

2    (and not the nonrenewal of an employment contract), and does not identify any

3    mistreatment by Defendant, the court denies the motion.   Motions to strike are

4    disfavored motions. Stanbury Law Firm v. I.R.S., 221 F.3d 1059, 1063 (8th Cir. 2000).

5    Here, because the court cannot conclude that the allegation has no possible bearing on

6    Plaintiff's disability claim, the court denies the motion.

7        In sum, the motion to strike is denied.

8                          **CONCLUSION**

9        In sum, the court denies the motion to dismiss the disability discrimination claim,

10   grants the motion to dismiss the wrongful termination claim, grants the motion to

11   dismiss the declaratory relief claim, denies the motion to strike and denies Plaintiff

12   leave to amend.[1]

13       **IT IS SO ORDERED.**

14   DATED:  March 23, 2015

15
                                                    _____
16                                                  Hon. Jeffrey T. Miller
                                                    United States District Judge
17   cc:          All parties

18

19

20

21

22

23

24

25

26   _____
27       [1] In her concluding paragraph, Plaintiff requests leave to amend.  Plaintiff
     identifies no legal or factual basis supporting the request. As the court has dismissed
28   with prejudice the wrongful termination claim (based upon the nonrenewal of the
     employment contract), any amendment would be futile and the request for leave to
     amend is denied.